WILLIAM J. FRIMEL (Bar No. 160287)
bill@sffwlaw.com
Seubert French Frimel & Warner LLP
1075 Curtis Street
Menlo Park, CA  94025
Tel:   650.322.3048
Fax:  650.833.2976

Attorneys for Subpoenaed Party
YELP INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. MUHAMMAD MIRZA and ALLIED MEDICAL AND DIAGNOSTIC SERVICES, LLC,<br><br>        Subpoenaing Parties,<br><br>   v.<br><br>YELP INC.,<br><br>        Subpoenaed Party. | Case No. 3:19-mc-80146-SK<br><br>**SUBPOENAED PARTY YELP INC.'S OPPOSITION TO MOTION TO ENFORCE COMPLIANCE WITH THIRD-PARTY SUBPOENA**<br><br>Hearing Date:  [To be determined]<br>Hearing Time:  [To be determined]<br>Courtroom:  C<br>Judge:  Hon. Sallie Kim |

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

INTRODUCTION                                                                          1

4

STATEMENT OF FACTS                                                              3

5

ARGUMENT                                                                              5

6

7   I.      PLAINTIFFS FAIL TO ADDUCE COMPETENT EVIDENCE AS TO
            ALL ELEMENTS OF THEIR DEFAMATION CLAIM                    6

8
        A.  The Challenged Statements Are Nonactionable Opinion          6
9
10          1.  The context of the challenged statements makes clear that they are
                protected opinion                                            7
11
12          2.  Even considered in isolation from their context, the statements are
                protected opinion                                            8
13
        B.  Plaintiffs Fail to Adduce Evidence that the Statements at Issue Are False   12
14
15      C.  The New York Court's Order Does Not Establish that Plaintiffs Meet the
            First *Highfields* Requirement                                  14

16  II.     ENFORCING PLAINTIFFS' SUBPOENA WOULD SIGNIFICANTLY
            HARM THE DOES' FIRST AMENDMENT AND PRIVACY RIGHTS       16
17
18      A.  Granting Plaintiffs' Motion Would Have a Substantial Chilling Effect on
            Constitutionally Protected Speech                              16
19
20      B.  Plaintiffs Have Not Demonstrated that the Reviews Caused Them Any
            Harm                                                           17
21
22      C.  Plaintiffs Have Not Demonstrated that the Does' Identities Cannot Be
            Obtained from Other Sources                                    18

23  CONCLUSION                                                                  19

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

| **Authority** | **Page** |
|---|---|
| *adMarketplace, Inc. v. Tee Support, Inc.*, No. 13 Civ. 5635, 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) | 15 |
| *Art of Living Found. v. Does 1-10,* No. 10–CV–05022, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) | 3, 16, 17, 19 |
| *Balderman v. Am. Broad. Cos.*, 738 N.Y.S.2d 462 (N.Y. App. Div. 2002) | 2, 12, 13 |
| *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10–861 RSM, 2015 WL 3407882 (W.D. Wash. May 27, 2015) | 9 |
| *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163 (2d Cir. 2000) | 13 |
| *Dex Media West v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012) | 18 |
| *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012) | 15 |
| *Dillon v. City of N.Y.*, 704 N.Y.S.2d 1 (N.Y. App. Div. 1999) | 2, 9, 11 |
| *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) | 19 |
| *Enterline v. Pocono Med. Ctr.*, 751 F. Supp. 2d 782 (M.D. Pa. 2008) | 19 |
| *Fleischer v. NYP Holdings, Inc.*, 961 N.Y.S.2d 393 (N.Y. App. Div. 2013) | 9, 11 |
| *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) | 1, 5-6, 16, 17 |
| *Immuno, AG v. Moor-Jankowski*, 77 N.Y.2d 235 (N.Y. 1991) | 10, 12 |
| *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y. 1998) | 10 |
| *John Wiley & Sons, Inc. v. Doe Nos. 1-22*, No. 12 Civ. 4231, 2013 WL 1091315 (S.D.N.Y. Mar. 15, 2013) | 15 |
| *Kidd v. Epstein*, 915 N.Y.S.2d 38 (N.Y. App. Div. 2010) | 6 |
| *Konig v. CSC Holdings, LLC*, 977 N.Y.S.2d 756 (N.Y. App. Div. 2013) | 6 |
| *Kraus v. Brandstetter*, 562 N.Y.S.2d 127 (N.Y. App. Div. 1990) | 11, 12 |
| *Levin v. McPhee*, 119 F.3d 189 (2d Cir. 1997) | 10 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*McCabe v. Rattiner,* 814 F.2d 839 (1st Cir. 1987) ..... 9

*McIntyre v. Ohio Elections Comm'n.*, 514 U.S. 334 (1995) ..... 3, 5, 16

*Nordyke v. Santa Clara Cty.*, 110 F.3d 707 (9th Cir. 1997) ..... 18

*Obi Pharma, Inc. v. Does 1-20*, No. 16CV2218, 2017 WL 1520085 (S.D. Cal. Apr. 27, 2017) ..... 17-18

*Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d 807 (N.Y. Sup. Ct. 2005) ..... 9, 11

*Sandals Resorts Int'l., Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407 (N.Y. App. Div. 2011) ..... 2, 7-8, 11

*SPX Corp. v. Doe*, 253 F. Supp. 2d 974 (N.D. Ohio 2003) ..... 8

*Steinhilber v. Alphonse*, 508 N.Y.S.2d 901 (N.Y. 1986) ..... 7, 10

*Strike 3 Holdings, LLC v. Doe,* 329 F.R.D. 518 (S.D.N.Y. 2019) ..... 15

*USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901 (N.D. Cal. 2010) ..... 6

*Varrenti v. Gannett Co.*, 929 N.Y.S.2d 671 (N.Y. Sup. Ct. 2011) ..... 7

*Versaci v. Richie*, 815 N.Y.S.2d 350 (N.Y. App. Div. 2006) ..... 2-3, 8

*Virginia State Bd. of Pharm. v. Va. Citizens Consumer Council*, 425 U.S. 748 (1976) ..... 18

*Yelp Inc. v. Hadeed Carpet Cleaning, Inc.*, 770 S.E.2d 440 (Va. 2015) ..... 17

*Yelp Inc. v. Super. Ct.*, 17 Cal. App. 5th 1 (2017) ..... 17

*ZL Techs., Inc. v. Gartner, Inc.,* 709 F. Supp. 2d 790 (N.D. Cal. 2010) ..... 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiff Dr. Muhammad Mirza, and his New York-based medical practice, Plaintiff Allied Medical and Diagnostic Services, LLC (collectively "Plaintiffs"), seek to compel Yelp Inc. ("Yelp"), which operates a popular website, yelp.com, and related mobile applications (collectively, the "Yelp Site"), to disclose the identities of eight individuals who anonymously reviewed Mirza's practice on the Yelp Site (the "Does"). The Yelp users criticized Mirza's services, which are apparently focused on administering Botox injections, in vague, emotionally-charged terms — saying, for instance, "DON'T GO!"; "Do Not [sic] waste your money! You get what you pay for!!!"; "DONT [sic] WASTE YOUR TIME!!!"; "I wish I would have seen ALLLL [sic] the complaints on RIP OFF REPORT before I wasted my money" and "Shut him down!"

Plaintiffs brought an action in the United States District Court for the Southern District of New York (the "New York Court") against eleven of Mirza's Yelp reviewers, which included the Does. Plaintiffs claimed, *inter alia*, that the reviews written by the Does (the "Reviews") are defamatory. Plaintiffs served a subpoena on Yelp, requesting the defendants' identities. Yelp initially objected to the subpoena, but agreed, following meet and confer discussions, to produce the identities of three of the anonymous defendants. Yelp continued to assert its objections with respect to the Does on the grounds that, *inter alia*, Plaintiffs have not met the requirements set forth in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) ("*Highfields*"), for requiring the disclosure of anonymous speakers' identities consistently with the First Amendment. Plaintiffs then brought the instant motion.

The *Highfields* test, which Plaintiffs agree is applicable, requires Plaintiffs to (1) provide "*competent evidence* . . . address[ing] all of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts," *id.* at 975 (emphasis in original); and (2) show "that enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs," *id.* at 976. Plaintiffs fail to meet either requirement.

*First*, Plaintiffs do not offer evidence supporting every element of their defamation claim. As an initial matter, under New York law, which undisputedly applies because the underlying action (the "New York Action") is pending in New York, Plaintiffs must demonstrate that the allegedly defamatory statements are statements of fact rather than opinion.  This inquiry depends on a consideration of "the writing as a whole, as well as the 'over-all context' of the publication." *Sandals Resorts Int'l., Ltd. v. Google, Inc.*, 925 N.Y.S.2d 407, 414 (N.Y. App. Div. 2011).

The bulk of the complained-of statements simply call Mirza a "scam artist" or a "fraud." Generalized accusations that the plaintiff is unsavory or dishonest, such as these, are too ambiguous to be statements of fact for defamation purposes.  Thus, they are not actionable.  *See, e.g., Dillon v. City of N.Y.*, 704 N.Y.S.2d 1, 7 (N.Y. App. Div. 1999) (defendant's statement that plaintiff was not "upstanding" was "too vague and imprecise in meaning to support a defamation claim").  The remaining statements consist of speculation regarding Mirza's procedure for administering injections (*e.g.*, "I think he's got water in those needles!!"), and conjecture like this is also protected opinion.

Moreover, even assuming the statements at issue are factual, Mirza is required, but fails, to provide evidence showing the falsity of those statements.  Most notably, Mirza's affidavit in support of Plaintiffs' motion claims he is not a "scam artist" because he is "a licensed and experienced medical profession [sic]."  As a "scam artist" is generally understood to simply mean someone who commits deceptive acts, Mirza's averment that he is licensed and experienced does not contradict this accusation, and therefore does not provide the requisite evidence of falsity. *See Balderman v. Am. Broad. Cos.,* 738 N.Y.S.2d 462, 467-68 (N.Y. App. Div. 2002) (trial court should have granted summary judgment on defamation claim, as "[t]he statistical proof submitted by plaintiff is insufficient to meet his burden of showing the falsity of the factual assertions underlying the opinions in defendant's broadcast").  As to the Reviews' context, the facts that (1) the Reviews were posted anonymously in an internet forum; (2) the Yelp Site disclaims any responsibility by Yelp for statements made on the site; and (3) the Reviews use hyperbolic, informal language in criticizing Mirza would lead a reasonable reader to see the Reviews as opinion.  *See, e.g., Versaci v. Richie*, 815 N.Y.S.2d 350, 351 (N.Y. App. Div. 2006) (statement

1   "of which plaintiff complains was asserted on an Internet public message board, which, as

2   characterized even by plaintiff, is a forum where people air concerns about any matter," and thus

3   was properly viewed as opinion).

4   *Second*, Plaintiffs do not show that enforcing their subpoena would "cause relatively little

5   harm" to the Does' First Amendment rights, or that it is needed to "protect against or remedy

6   serious wrongs."  "An author's decision to remain anonymous . . . is an aspect of the freedom

7   protected by the First Amendment," *McIntyre v. Ohio Elections Comm'n.*, 514 U.S. 334, 342

8   (1995), and forcing Yelp to disclose the Does' identities and thus subject the Does to litigation

9   would have a chilling effect on anonymous internet speech.  *See Art of Living Found. v. Does 1-10*,

10  No. 10–CV–05022, 2011 WL 5444622, *7 (N.D. Cal. Nov. 9, 2011) ("[D]isclosure of [anonymous

11  defendant's] identity here could discourage other bloggers from engaging in lawful, critical speech . .

12  . .").  On the other hand, Mirza's affidavit makes no claim that any of the Reviews actually caused

13  him to lose business or otherwise harmed his medical practice.  Thus, the balance of harms plainly

14  weighs in favor of the Does and Yelp.

15                              **STATEMENT OF FACTS**

16          The Yelp Site provides a forum in which users, free of charge, can read and write reviews

17  of local businesses.  (Decl. of Nicolette Martz, Jun. 12, 2019 ("Martz Decl."), ¶ 2.)  The site's

18  Terms of Service applicable as of the date of the Reviews state that reviews on the site are

19  authored by third parties and do not reflect Yelp's opinions.  (*See, e.g.*, *id.* Exh. A, ¶ 5(F) ("User

20  Content . . . does not necessarily reflect the opinion of Yelp.").)  Further, the Yelp Site's Privacy

21  Policy makes clear that users may author reviews under pseudonyms.  (*See id.* Exh. B, ¶ 4

22  ("[Y]ou can reduce the risk of being personally identified by using the Service pseudonymously .

23  . . .").)

24          There are presently more than three hundred reviews of Mirza's practice on the Yelp Site.

25  (*Id.* ¶ 5 & Exhs. C, D.)  The Does authored the Reviews between November 2017 and June 2018.

26  (*Id.* Exh. E.)  The Does posted the Reviews under usernames, or screen names, that, as Plaintiffs

27  acknowledge (Decl. of Justin Mercer, May 29, 2019, Dkt. No. 3 ("Mercer Decl."), ¶ 19), are

28  likely pseudonyms, such as "Doris B.," "Tina K.," and "Augustine S" (Martz Decl. Exh. E).  For

ease of reference, as discussed in Plaintiffs' Second Amended Complaint in the New York Action (the "SAC"), the anonymous defendants at issue in this motion are as follows:

| Doe No. | Username | Date of Review |
|---|---|---|
| 3 | Doris B. | November 20, 2017 |
| 4 | Tina K. | December 5, 2017 |
| 5 | Augustine S. | January 23, 2018 |
| 6 | Donna D. | February 9, 2018 |
| 7 | Ashley W. | March 28, 2018 |
| 8 | Ashley W. | March 29, 2018 |
| 9 | T H | April 3, 2018 |
| 11 | Katie M. | June 9, 2018 |

(Mercer Decl. Exh. B, ¶¶ 29-77, 85-91.)  The Reviews use hyperbolic, informal language in criticizing Mirza, stating "DON'T GO!"; "Do Not [sic] waste your money!  You get what you pay for!!!"; "DONT [sic] WASTE YOUR TIME!!!"; "I wish I would have seen ALLLL [sic] the complaints on RIP OFF REPORT before I wasted my money"; and "Shut him down!"  (Martz Decl. Exh. E, at 1-3.)

Plaintiffs brought the New York Action on July 10, 2018, naming eleven reviewers, including the Does, as defendants.  (Mercer Decl. ¶ 4.)  Plaintiffs filed an application in the New York Court requesting permission to serve subpoenas on, among other entities, Yelp, prior to the Fed. R. Civ. P. 26(f) conference.  (*Id.* Exh. C.)  The New York Court issued an order that consisted of a copy of Plaintiffs' application with an underline added to the language "leave to serve third-party subpoenas pursuant to Federal Rule of Civil Procedure 45 in order to identify John Does #1-11," and the handwritten note "Plaintiff may proceed to serve subpoenas."  (*Id.* Exh. C, at 2.)

Plaintiffs served a subpoena on Yelp in August 2018.  (*Id.* Exh. D)  Yelp objected on the grounds that, *inter alia*, Plaintiffs fail to meet the *Highfields* requirements.  (*Id.* Exh. E.)  On November 26, 2018, following meet and confer discussions, Yelp agreed to produce the identities

1    of three individuals who are not at issue in this motion, but maintained its objections with respect

2    to the Does. (Martz Decl. Exh. F, at 1.)[1]  Plaintiffs then named the identified individuals as

3    defendants in the New York Action. (Mercer Decl. ¶¶ 16, 19, 20.)  More than six months after

4    the parties' November 2018 discussion, on May 30, 2019, Plaintiffs brought this motion.

5    <u>**ARGUMENT**</u>

6    As *Highfields* recognized, "the interests and policies invoked by" Yelp in objecting to

7    Plaintiffs' subpoena "are of considerable potential significance. Indeed, they are rooted in the

8    First Amendment to the Constitution of the United States." *Highfields*, 385 F. Supp. 2d at 974-

9    75.  The right at stake is, specifically, the reviewers' "right to express most effectively and

10    anonymously, without fear of expensive adverse consequences, [their] views . . . ." *Id.*; *see also*

11    *McIntyre,* 514 U.S. at 342 ("An author's decision to remain anonymous, like other decisions

12    concerning omissions or additions to the content of a publication, is an aspect of the freedom

13    protected by the First Amendment."). In the interest of protecting this important right, *Highfields*

14    sets forth two requirements that a plaintiff seeking to compel disclosure of the identity of an

15    anonymous speaker must meet.

16    "Because of the importance and vulnerability of" the First Amendment rights at stake,

17    "the first component of the test is a requirement that the plaintiff persuade the court that there is a

18    real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has

19    caused real harm to the interests of the plaintiff that the laws plaintiff has invoked were intended

20    to protect." *Id.* at 975.  To meet this requirement, "the plaintiff must adduce *competent evidence*

21    — and the evidence plaintiff adduces must address all of the inferences of fact that plaintiff

22

23    [1] Plaintiffs claim that, after Yelp produced the three reviewers' identities in January 2019,
"Plaintiffs expected Yelp's production to be more substantial." (Pls.' Mot. to Enf. Compliance

24    with Third Party Subp., May 30, 2019, at 5.)  In fact, after the parties had a telephonic discussion
and Plaintiffs' counsel provided an affidavit by Mirza, Yelp's in-house counsel emailed

25    Plaintiffs' counsel on November 26, 2018, stating that the affidavit "does not set forth a prima
facie showing of defamation with respect to any other user" and thus "Yelp will not be able to

26    produce with respect to those users." (Martz Decl. Exh. F, at 1.)  Moreover, despite N.D. Cal.
L.R. 1-5(n)'s requirement that a meet and confer take place "either in a face to face meeting or in

27    a telephone conversation," Plaintiffs did not have a further, face to face or telephonic discussion
with Yelp's counsel after providing Mirza's affidavit.  Thus, it is unclear why Plaintiffs' counsel

28    would have formed their alleged expectation.

1  would need to prove in order to prevail under at least one of the causes of action plaintiff asserts."

2  *Id.* (emphasis in original).

3       "[T]he second component of the test requires the court to assess and compare the

4  magnitude of the harms that would be caused to the competing interests by a ruling in favor of

5  plaintiff and by a ruling in favor of defendant.  If, after such an assessment, the court concludes

6  that enforcing the subpoena would cause relatively little harm to the defendant's First

7  Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect

8  against or remedy serious wrongs," the disclosure of the anonymous speaker's identity may only

9  then be compelled.  *Id.* at 976.

10  **I.       PLAINTIFFS FAIL TO ADDUCE COMPETENT EVIDENCE AS TO ALL
               ELEMENTS OF THEIR DEFAMATION CLAIM**

11

12       As Plaintiffs acknowledge (Pls.' Mot. to Enf. Compliance with Third Party Subpoena,

13  May 30, 2019, Dkt. No. 2 ("Pls.' Mem."), at 9), because Plaintiffs' underlying action is pending

14  in New York, New York law determines whether Plaintiffs have offered a "real evidentiary basis"

15  for their defamation claim.  *See USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 908 (N.D. Cal.

16  2010) (in motion to enforce subpoena in aid of Pennsylvania action, motion denied, as plaintiff

17  "cannot demonstrate a prima facie case of defamation under Pennsylvania law because the

18  statements complained of are not defamatory as a matter of law").

      **A.  The Challenged Statements Are Nonactionable Opinion**

19

20       "In determining whether a complaint states a cause of action to recover damages for

21  defamation, the dispositive inquiry is whether a reasonable listener or reader could have

22  concluded that the statements were conveying facts about the plaintiff."  *Konig v. CSC Holdings,*

23  *LLC*, 977 N.Y.S.2d 756, 758 (N.Y. App. Div. 2013).  "As the Court of Appeals has explained,

24  '[o]pinions, false or not, libelous or not, are constitutionally protected and may not be the subject

25  of private damage actions, provided that the facts supporting the opinions are set forth.'"  *Kidd v.*

26  *Epstein*, 915 N.Y.S.2d 38, 39 (N.Y. App. Div. 2010).  To decide if the allegedly defamatory

27  statements are fact or opinion, "it is necessary to consider the writing as a whole, as well as the

28  'over-all context' of the publication, to determine 'whether the reasonable reader would have

-6-

believed that the challenged statements were conveying facts about the libel plaintiff.'" *Sandals Resorts Int'l., Ltd.*, 925 N.Y.S.2d at 414. "[E]ven apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole." *Steinhilber v. Alphonse*, 508 N.Y.S.2d 901, 907 (N.Y. 1986).

Given the anonymous nature of the Reviews and their emotionally-charged, hyperbolic rhetoric, a reasonable reader would not construe the Reviews as making reliable statements of fact. Moreover, even taking the statements referenced by Plaintiffs in isolation from their context, they cannot be reasonably interpreted as factual.

### 1. The context of the challenged statements makes clear that they are protected opinion

The Reviews use angry, exaggerated language in describing Plaintiffs, saying, for instance, "DON'T GO!" (Martz Decl. Exh. E, at 1); "Do Not [sic] waste your money! You get what you pay for!!!" (*id.* at 2); "DONT [sic] WASTE YOUR TIME!!!" (*id.* at 1); "I wish I would have seen ALLLL [sic] the complaints on RIP OFF REPORT before I wasted my money" (*id.* at 2); and "Shut him down!" (*id.*). In light of this rhetoric, which permeates the Reviews, a reasonable reader would not construe the Reviews as making objective statements of fact. *See Sandals Resort Int'l., Ltd.*, 925 N.Y.S.2d at 415 ("The tone of the e-mail" alleged to be defamatory "indicates that the writer is expressing his or her personal views, in that it reflects a degree of anger and resentment at the idea that travel agents make money from the success of [plaintiff]"); *Varrenti v. Gannett Co.*, 929 N.Y.S.2d 671, 677 (N.Y. Sup. Ct. 2011) ("[B]ased on the over-all context in which the alleged defamatory statements were made, a reasonable reader would conclude that the statements were the opinions of the anonymous John/Jane Doe defendants," because "[t]he tone of the comments was sarcastic, hyperbolic, and based on rumors that the anonymous posters heard . . . about" plaintiffs).

Further, the Reviews' nature as anonymous postings, among many other reviews of Mirza (Martz Decl. ¶ 5), on an internet site also supports a finding that a reasonable reader would interpret the Reviews as non-actionable opinion. *See Sandals Resort Int'l., Ltd.*, 925 N.Y.S.2d at

1  415-16 (basing finding that e-mail at issue was non-actionable opinion on, *inter alia*, the facts that

2  (1) "readers give less credence to allegedly defamatory remarks published on the Internet than to

3  similar remarks made in other contexts," and (2) "the anonymity of the e-mail makes it more

4  likely that a reasonable reader would view its assertions with some skepticism and tend to treat its

5  contents as opinion rather than fact") (citing Cheverud, Comment, *Cohen v. Google, Inc.*, 55 N.Y.

6  L. Sch. L. Rev. 333, 335 (2011)); *Versaci v. Richie*, 815 N.Y.S.2d 350, 351 (N.Y. App. Div.

7  2006) (statement "of which plaintiff complains was asserted on an Internet public message board,

8  which, as characterized even by plaintiff, is a forum where people air concerns about any matter,"

9  and thus was properly viewed as one of opinion).

10      Finally, Yelp's Terms of Service make clear that Yelp does not control the content of

11  users' posts, and simply provides a forum for third parties to express opinions.  (*See, e.g.*, Martz

12  Decl. Exh. A, ¶ 5(F) ("User Content . . . does not necessarily reflect the opinion of Yelp."); *id.* ¶

13  5(A) ("You may not imply that Your Content is in any way sponsored or endorsed by Yelp.").)

14  This also supports a finding that the Reviews are protected opinion.  *See ZL Techs., Inc. v.*

15  *Gartner, Inc.,* 709 F. Supp. 2d 790, 797 (N.D. Cal. 2010) (in action concerning review of

16  plaintiff's products, the fact that the review stated that "opinions expressed herein are subject to

17  change without notice" supported finding that review was protected opinion); *SPX Corp. v. Doe*,

18  253 F. Supp. 2d 974, 981 (N.D. Ohio 2003) (in defamation action concerning statements on

19  message board, disclaimer providing that "[t]his board is not connected with the company" it

20  concerned, and "[t]hese messages are only the opinion of the poster . . . and should not be relied

21  upon for trading or any other purpose," supported finding that statements were opinion).

22      Accordingly, contrary to Plaintiffs' unsupported assertion that "the statements . . . are

23  intended and understood to be factual" (Pls.' Mem. at 11), a reasonable reader would likely

24  construe the challenged statements as opinion.

25      **2.  Even considered in isolation from their context, the statements are**
       **protected opinion**

26

27  **Does 4, 6, 7 and 11.**  Plaintiffs allege that three of the Reviews are defamatory because

28  they refer to Mirza as a "scam artist."  (Mercer Decl. Exh. F ("Mirza Aff."), ¶ 5 (Doe 4 Review);

-8-

*id.* ¶ 7 (Doe 6); *id.* ¶ 8 (Doe 7).)  Similarly, Plaintiffs assert that Doe 11's Review is defamatory because it calls Mirza a "fraud."  (*Id.* ¶ 11.)  However, under New York law, a generalized claim that the plaintiff is dishonest or unsavory is too ambiguous to constitute a statement of fact.  *See Fleischer v. NYP Holdings, Inc.*, 961 N.Y.S.2d 393, 394-95 (N.Y. App. Div. 2013) (defamation claim properly dismissed based on article that "quoted one of plaintiff's former students who stated that plaintiff had 'ridiculous' mood swings, would 'create issues' to get students 'in trouble,' and was a 'narc,'" as "[s]uch vague terms indicate non-actionable expressions of opinion"); *Dillon v. City of N.Y.*, 704 N.Y.S.2d 1, 7 (N.Y. App. Div. 1999) (defendant's statement that plaintiff was not "upstanding" was "too vague and imprecise in meaning to support a defamation claim"); *Penn Warranty Corp. v. DiGiovanni*, 810 N.Y.S.2d 807, 813, 815 (N.Y. Sup. Ct. 2005) (statements on website that plaintiff is "a 'blatantly dishonest company'" and "a 'crooked company,'" and "has 'been ripping off its contract holders for quite a while,'" were not actionable because they "are susceptible to ambiguous meanings," and "[l]oose, figurative or hyperbolic statements, even if deprecating to the plaintiff, are not actionable"); *see also McCabe v. Rattiner,* 814 F.2d 839, 842 (1st Cir. 1987) ("[T]he word 'scam' does not have a precise meaning. . . . The lack of precision makes the assertion 'X is a scam' incapable of being proven true or false."); *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10–861 RSM, 2015 WL 3407882, *8 (W.D. Wash. May 27, 2015) (defendant's "references to [plaintiff's] sale of milk fiber yarns as a 'scam' and [plaintiff's] promotion of these yarns as 'hype' lack sufficient precision to be provably true or false and cannot therefore support a defamation claim").

**Doe 3.**  Plaintiffs' defamation claim is based on Doe 3's statement that, in addition to being a "scam artis [sic]," Mirza "goes from one office to another injects [sic] things he should not."  (Mercer Decl. Exh. B, ¶ 30.)  As discussed above, Doe 3's allegation that Mirza is a "scam artist" is insufficiently specific to be factual.  As to the allegation that Mirza "injects things he should not," Doe 3's Review does not make clear what Mirza "injects" that he "should not," or the basis for Doe 3's belief that Mirza "should not" inject those "things."  Thus, that allegation is too vague to be a statement of fact as well.  *Fleischer*, 961 N.Y.S.2d at 394-95; *Dillon*, 704 N.Y.S.2d at 7; *Penn Warranty Corp.*, 810 N.Y.S.2d at 813, 815.

1  **Doe 5.**  Plaintiffs claim Doe 5's statement that Doe 5 has "[n]o idea what he was 'mixing'

2  it with" is defamatory.  (Mirza Aff. ¶ 6.)  Because the previous sentence states that "Botox is

3  supposed to last for 3-6 months, It [sic] barely lasted a month" (Martz Decl. Exh. E, at 1), Mirza

4  interprets this statement to mean that Mirza "'mix[es]' Botox injections with" something "other

5  than what is recommended by the manufacturers of Botox (Allergen), which is 0.9% preservative-

6  free Sodium Chloride" (Mirza Aff. ¶ 6).  But Doe 5's statement that Doe 5 has "*no idea*" what

7  Mirza "was 'mixing'" Doe 5's Botox injection with indicates that Doe 5 lacks personal

8  knowledge as to whether Mirza "mixed" the Botox with any other chemical, or, if Mirza did so,

9  what chemical Mirza used.  Doe 5's statement is thus speculation or conjecture, which is a form

10  of opinion and thus is not actionable as defamation.  *See Levin v. McPhee*, 119 F.3d 189, 197 (2d

11  Cir. 1997) (defendant stated that his "allegation of [plaintiff's] possible involvement in a murder"

12  was "imagined," which placed the allegation "in the category of opinion — opinion based on

13  speculation without any implication of fact") (applying New York law); *Immuno, AG v. Moor-

14  Jankowski*, 77 N.Y.2d 235, 255 (N.Y. 1991) (allegedly defamatory letter did not make actionable

15  statements, as "the writer's presumptions and predictions as to what 'appeared to be' or 'might

16  well be' or 'could well happen' . . . would not have been viewed by the average reader . . . as

17  conveying actual facts").

18  Nor can Plaintiffs characterize Doe 5's statement as "mixed opinion," *i.e.*, opinion that

19  "implies that it is based upon facts which justify the opinion but are unknown to those reading or

20  hearing." *Steinhilber*, 68 N.Y.2d at 289.  Where, as here, an allegedly defamatory statement is "a

21  statement of opinion based upon disclosed facts," and "the plaintiff only asserts that the opinions

22  are false, and does not challenge the veracity of the underlying facts, the plaintiff may not sustain

23  a libel action." *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998).  Doe 5's

24  Review discloses the facts on which Doe 5 bases the statement that he or she has "[n]o idea what

25  [Mirza] was 'mixing' it with."  Specifically, Doe 5 notes that, although "Botox is supposed to last

26  for 3-6 months," "[i]t barely lasted a month" (Martz Decl. Exh. E, at 1), and Mirza's affidavit

27  does not claim this is false (*i.e.*, that the Botox treatment Mirza administered to Doe 5 in fact

28  lasted longer than a month).  Thus, Doe 5's statement is "pure," rather than "mixed," opinion, and

-10-

1   is not defamatory. *See Sandals Resorts Int'l., Ltd.*, 925 N.Y.S.2d at 415 ("Nor does the"

2   allegedly defamatory "e-mail imply that it is based upon undisclosed facts; . . . each remark is

3   prompted by or responsive to a hyperlink, that is, it is 'accompanied by a recitation of the facts

4   upon which it is based,' and therefore qualifies as 'pure opinion' under the *Steinhilber* analysis.").

5        Finally, even assuming a reasonable reader would construe Doe 5's statement to make the

6   factual claim that Mirza mixes the Botox he uses with some other substance, Mirza himself

7   acknowledges that he *does* mix the Botox with sodium chloride. Thus, that factual claim is

8   truthful, and therefore cannot be defamatory. *See Kraus v. Brandstetter*, 562 N.Y.S.2d 127, 130

9   (N.Y. App. Div. 1990) ("[I]n order to be actionable in defamation, a statement must be both false

10  and defamatory. Since [defendant] stated that [plaintiff] was going to be fired in the future, and

11  [plaintiff] was subsequently fired . . . , the challenged statement was substantially true, and

12  therefore, not defamatory . . . .").

13       **Doe 8.** Mirza's defamation claim relies on Doe 8's statement "[c]an't believe this 'doctor'

14  hasn't been shut down by the authorities." (Mercer Decl. Exh. B, ¶ 65.) As this statement makes

15  no factual allegations, and merely sets forth Doe 8's surprise at the alleged inaction of "the

16  authorities," it is plainly opinion. *See Fleischer*, 961 N.Y.S.2d at 394-95; *Dillon*, 704 N.Y.S.2d at

17  7; *Penn Warranty Corp.*, 810 N.Y.S.2d at 813, 815. Moreover, as with Doe 5, to the extent

18  Plaintiffs claim Doe 8's statement is "mixed opinion," Plaintiffs are incorrect. Doe 8's Review

19  details the factual basis for Doe 8's surprise that "the authorities" have not acted — stating, for

20  instance, that Mirza "didn't use any antiseptic wipes or anything," "[w]hen I asked for ice at the

21  end he said icing it would remove the Botox," and "[h]e was rude" and "unprofessional." (Martz

22  Decl. Exh. E, at 2.) Mirza's affidavit does not contest any of these factual claims. Accordingly,

23  Doe 8's statement is "pure opinion" and protected from defamation liability. *See Sandals Resorts*

24  *Int'l., Inc.*, 925 N.Y.S.2d at 413.

25       **Doe 9.** Finally, Mirza claims Doe 9's statement that "[t]his doctor is a scam and I think

26  he's got water in those needles" is defamatory. (Mirza Aff. ¶ 9.) As noted above, the accusation

27  that Mirza is a "scam" is not actionable. Further, Doe 9's assertion that Doe 9 "*think[s]*" Mirza

28  has "water in those needles" indicates that Doe's statement is speculation, which is nonactionable

-11-

1    opinion.  *See Levin*, 119 F.3d at 197; *Immuno, AG*, 77 N.Y.2d at 255.  Nor can Plaintiffs claim

2    this statement is mixed opinion.  Doe 9's Review discloses the facts on which Doe 9 bases the

3    "thought" that Mirza has "water in those needles" — *i.e.*, Doe 9 "[w]ent to Dr. Mirza and saw

4    barely any effects from Botox."  (Martz Decl. Exh. E, at 3.)  Moreover, Mirza's affidavit does not

5    deny that Doe 9 "saw barely any effects" from the treatment Doe 9 received from Mirza.  Thus,

6    Plaintiffs cannot make a prima facie case of defamation based on Doe 9's Review either.  *See*

7    *Sandals Resorts Int'l., Inc.*, 925 N.Y.S.2d at 43.

8              **B.  Plaintiffs Fail to Adduce Evidence that the Statements at Issue Are False**

9              Even assuming the challenged statements are factual, "a libel plaintiff has the burden of

10   showing the falsity of factual assertions . . . ."  *Immuno, AG*, 77 N.Y.2d at 245; *see also* Pls.'

11   Mem. at 9 (acknowledging that Plaintiffs "must show . . . 'a false and defamatory statement of

12   and concerning the plaintiff'").  As Mirza's affidavit in support of Plaintiffs' motion fails to

13   provide evidence that the challenged statements are false, Plaintiffs do not meet this requirement.

14             **Does 3 and 8.**  As to two of the allegedly defamatory Reviews — the Reviews attributed

15   to Does 3 and 8 in the SAC (Mercer Decl. Exh. B, ¶¶ 29, 64) — Mirza's declaration does not

16   even mention those Reviews.  Thus, Plaintiffs submit no evidence that any aspect of Does 3 and

17   8's Reviews are false, and cannot make a prima facie case as to them.  *See Balderman v. Am.*

18   *Broad. Cos.,* 738 N.Y.S.2d 462, 467 (N.Y. App. Div. 2002) (trial court should have granted

19   summary judgment on defamation claim, as "[t]he statistical proof submitted by plaintiff is

20   insufficient to meet his burden of showing the falsity of the factual assertions underlying the

21   opinions in defendant's broadcast"); *Kraus*, 562 N.Y.S.2d at 130.

22             **Does 4, 6 and 7.**  These Reviews are supposedly defamatory because they say Mirza is a

23   "scam artist."  (Mirza Aff. ¶¶ 5, 7, 8.)  However, even assuming that assertion is factual for

24   defamation purposes, Mirza's affidavit does not contradict it.  Mirza claims Does 4, 6 and 7's

25   Reviews are false because "I am a licensed and experienced medical profession [sic]."  (*Id.* ¶¶ 5,

26   7, 8.)  However, Does 4, 6 and 7's Reviews nowhere claim Mirza is not "licensed" or

27   "experienced."  (Martz Decl. Exh. E.)  Nor would a reasonable reader interpret these Reviews'

28   accusation that Mirza is a "scam artist" to mean he is not licensed or experienced.  In common

-12-

parlance, a "scam artist" is "[a] person who attempts to defraud others by presenting a fraudulent offer and pretending that it is legitimate; a con artist." (Decl. of William J. Frimel, Jun. 13, 2019 ("Frimel Decl."), Exh. A (https://www.yourdictionary.com/scam-artist); *see also id.* Exh. B (https://www.macmillandictionary.com/us/dictionary/american/scam-artist); *id.* Exh. C (https://en.wiktionary.org/wiki/scam_artist).) Thus, even if Mirza is "licensed" and "experienced" as a medical professional, he could nonetheless qualify as a "scam artist" under the generally accepted definition if he engaged in any type of deceptive conduct.

**Doe 11.** Mirza's defamation claim relies on this Review's statement that Mirza is a "fraud." (Mirza Decl. ¶ 11.) Mirza asserts that "[t]his is false because I am not a 'fraud.'" (*Id.*) Mirza's mere denial of Doe 11's statement, with no elaboration regarding why Mirza supposedly is not a "fraud," is not sufficient to make a prima facie case of falsity. *See Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 188-89 (2d Cir. 2000) (plaintiff's mere assertion that defendant's statement that plaintiff engaged in "black propaganda" was "false," "in the absence of at least foundation testimony or extrinsic evidence, [is] not sufficient to satisfy the constitutional requirement that a public figure establish falsity") (applying New York law); *Balderman,* 738 N.Y.S.2d at 467.

**Doe 5.** Mirza avers that Doe 5's statement "[n]o idea what [Mirza] was 'mixing' it with" is false because "I do not 'mix' Botox injections with anything other than what is recommended by the manufacturers of Botox (Allergen), which is 0.9% preservative-free Sodium Chloride." (Mirza Aff. ¶ 6.) "It" in the statement "[n]o idea what [Mirza] was 'mixing' it with" refers to the Botox that Mirza allegedly injected into Doe 5. (Martz Decl. Exh. E, at 1.) Mirza's assertion that he only mixes Botox with sodium chloride does not contradict Doe 5's statement that Doe 5 does not know what Mirza mixed the Botox with. Stated differently, it can be the case that both (1) Mirza mixed the Botox he administered to Doe 5 with sodium chloride (and Doe 5 makes no suggestion that Mirza used a chemical other than sodium chloride); and (2) Doe 5 was not aware of what chemical Mirza mixed the Botox with. Accordingly, Mirza's averment does not make a prima facie case of falsity as to this Review.

**Doe 9.**  Finally, Mirza avers that Doe 9's statement that "[t]his doctor is a scam and I think he's got water in those needles" is false because "I am a licensed and experienced medical profession [sic] and I am not 'scam' [sic] and I do not use 'fake' products or water in place of Botox."  (Mirza Aff. ¶ 9.)  As discussed above, Mirza's assertion that he is a "licensed and experienced medical profession" does not contradict the claim that Mirza is a "scam."  As to Doe 9's statement that "I think he's got water in those needles," Mirza's claim that he does not use "water in place of Botox" does not contradict that statement.  Doe 9's statement describes Doe 9's subjective belief (*i.e.*, Doe 9's "thought" that Mirza has "water in those needles"), and Mirza makes no suggestion that Doe 9 does not in fact hold that belief.  Even if Doe 9's statement constitutes a factual claim, a reasonable reader would not interpret Doe 9's statement to literally mean Mirza put "water in his needles," but instead would construe it to simply mean the treatment Mirza administered was ineffective.  Other language in Doe 9's Review makes this clear — specifically, Doe 9's claim that Doe 9 "saw barely any effects from Botox" after being treated by Mirza.  (Martz Decl. Exh. E, at 3.)  As Mirza nowhere says the treatment he administered to Doe 9 was effective, Mirza fails to provide evidence that the challenged statement by Doe 9 is false.  *See Sandals Resort Int'l., Ltd.*, 925 N.Y.S.2d at 414 (in determining whether statement is defamatory, "it is necessary to consider the writing as a whole").

### C.  The New York Court's Order Does Not Establish that Plaintiffs Meet the First *Highfields* Requirement

Plaintiffs assert that, in permitting Plaintiffs to subpoena Yelp prior to the Rule 26(f) conference, the New York Court "determined that Plaintiffs stated a prima facie case" of defamation.  (Pls.' Mem. at 4.)  Although Plaintiffs state that they "do not request that this Court supplant its determination for that of the underlying court," which apparently means they are not claiming the Court should give the New York Court's order some type of deference (*id.* at 9), for the avoidance of doubt, the order is of no help to Plaintiffs in this proceeding.

The order solely consists of a copy of Plaintiffs' counsel's letter to the court seeking leave to serve their subpoena, with an added underline beneath the language "leave to serve third-party subpoenas pursuant to Federal Rule of Civil Procedure 45 in order to identify John Does #1-11"

-14-

1    and a handwritten note saying "Plaintiff [sic] may proceed to serve subpoenas." (Mercer Decl.

2    Exh. C, at 2.) Thus, the order does not discuss the court's basis for permitting Plaintiffs to serve

3    their subpoena, and certainly does not say Plaintiffs made a prima facie case. Moreover,

4    Plaintiffs obtained the order on an *ex parte* basis, as Yelp was unaware of Plaintiffs' application

5    to serve their subpoena and has not participated in the New York Action. (Martz Decl. ¶ 8.)

6        Plaintiffs appear to claim the New York Court implicitly found that Plaintiffs met the

7    prima facie case requirement because, supposedly, making a prima facie case is a prerequisite to

8    obtaining early discovery under Fed. R. Civ. P. 26(d)(1). (Pls.' Mem. at 6-7.) In fact, in the

9    Southern District of New York (where the New York Court is located), it is far from clear that a

10   plaintiff must submit evidence as to all elements of the plaintiff's cause of action, as *Highfields*

11   requires, to obtain discovery before a Rule 26(f) conference. While *adMarketplace, Inc. v. Tee*

12   *Support, Inc.*, No. 13 Civ. 5635, 2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013), which Plaintiffs

13   cite (Pls.' Mem. at 7), permitted the plaintiff to serve early discovery because "Plaintiff has

14   provided evidence that Defendants are publishing false statements about their product on its

15   websites," *adMarketplace, Inc.*, 2013 WL 4838854, *2, other cases in that district suggest that a

16   plaintiff need only *plead* a viable cause of action to obtain early discovery. *See Strike 3 Holdings,*

17   *LLC v. Doe,* 329 F.R.D. 518, 521 (S.D.N.Y. 2019) (plaintiff permitted to pursue early discovery

18   because "[t]he Plaintiff's complaint plainly sets out the copyrighted works at issue and provides

19   comprehensive allegations regarding the manner by which the Defendant copied the various

20   works"); *John Wiley & Sons, Inc. v. Doe Nos. 1-22*, No. 12 Civ. 4231, 2013 WL 1091315, *5

21   (S.D.N.Y. Mar. 15, 2013) (allowing early discovery because plaintiff "has *alleged* a prima facie

22   case of copyright infringement") (emphasis added). The variety among the standards applied by

23   courts to determine whether Rule 26(d)(1) permits early discovery is consistent with the statement

24   in *Digital Sin, Inc. v. John Does 1-176*, 279 F.R.D. 239 (S.D.N.Y. 2012), that "courts apply a

25   'flexible standard of reasonableness and good cause'" in making that determination. *Id.* at 241.

26   Thus, it would be unwarranted to infer from the New York Court's order that Plaintiffs offered

27   evidence sufficient to meet the first prong of the *Highfields* test.

28

## II. ENFORCING PLAINTIFFS' SUBPOENA WOULD SIGNIFICANTLY HARM THE DOES' FIRST AMENDMENT AND PRIVACY RIGHTS

Even assuming Plaintiffs have submitted prima facie evidence of the Does' defamation liability, Plaintiffs must further establish that "enforcing the subpoena would cause relatively little harm to the defendant's First Amendment and privacy rights and that its issuance is necessary to enable plaintiff to protect against or remedy serious wrongs." *Highfields*, 385 F. Supp. 2d at 976. Plaintiffs cannot make this showing.

### A. Granting Plaintiffs' Motion Would Have a Substantial Chilling Effect on Constitutionally Protected Speech

As noted above, "[a]n author's decision to remain anonymous . . . is an aspect of the freedom protected by the First Amendment," *McIntyre*, 514 U.S. at 342, and compelling Yelp to expose the identities of persons who engaged in such speech on the Yelp Site threatens to chill anonymous expression. Moreover, ensuring Yelp's reviewers can remain anonymous is critical to Yelp's goal of making its site helpful to consumers seeking goods and services. This is because, if the businesses reviewed by Yelp's users could easily learn the users' identities, users would become reluctant to voice honest criticisms of those businesses, for fear of the very sort of retaliatory litigation Plaintiffs are engaged in. (Martz Decl. ¶ 9; *see also Art of Living Found.*, 2011 WL 5444622, *7 ("[D]isclosure of [anonymous defendant's] identity here could discourage other bloggers from engaging in lawful, critical speech . . . ."); *Highfields*, 385 F. Supp. 2d at 980-81 ("[I]f the court were to enforce plaintiff's subpoena, the court would be enabling plaintiff to impose a considerable price on defendant's use of" website at issue, which "would include public exposure of plaintiff's identity and the financial and other burdens of defending against a multi-count lawsuit").)

Plaintiffs suggest that "the Defendants may not in fact, be [sic] 'anonymous' as their accounts names [sic] could be the Defendants' real first names and the first initial of their last name (like 'Doris B.')," and that this "vitiat[es] any claim to complete anonymity." (Pls.' Mem. at 11-12.) Plaintiffs are well aware that this is incorrect. Plaintiffs' counsel's own declaration notes the "likelihood that Defendants used pseudonyms when they posted on Yelp anonymously" (Mercer Decl. ¶ 19), indicating Plaintiffs' understanding that Yelp permits users to author reviews under pseudonyms. This is confirmed by the statement in Yelp's Privacy Policy, which appears on its site, that

-16-

1    "[y]ou," the user, "can reduce the risk of being personally identified by using the Service

2    pseudonymously . . . ." (Martz Decl. Exh. B, ¶ 4.) Courts have also recognized that Yelp users are

3    permitted to, and regularly, write reviews under pseudonyms. *See, e.g., Yelp Inc. v. Super. Ct.*, 17

4    Cal. App. 5th 1, 8 (2017) ("In its terms of service, Yelp specifically acknowledges its users may

5    'use a pseudonym' when posting reviews."); *Yelp Inc. v. Hadeed Carpet Cleaning, Inc.*, 770

6    S.E.2d 440, 441 (Va. 2015) ("Since Yelp does not require users to provide their actual names,

7    users may post reviews under pseudonyms."). Finally, Mirza could presumably determine

8    whether the Does' usernames are, in fact, their real names by comparing the Does' usernames to

9    the names of patients in Mirza's records, but Mirza nowhere claims to have done so. Thus, there

10   is no reason to believe the screen names used by the Does on the Yelp Site are their actual names.

11   **B. Plaintiffs Have Not Demonstrated that the Reviews Caused Them Any Harm**

12   Plaintiffs assert that they "have alleged and submitted evidence (*i.e.* the Mirza Aff.) which

13   demonstrates that the intended and resulting effect of the [Reviews] . . . has been to dissuade

14   Plaintiffs' patients and customers from doing business with them." (Pls.' Mem. at 11.) In fact,

15   Mirza's affidavit contains no discussion of any harm to his business allegedly resulting from the

16   Reviews. Instead, Mirza alleges only that certain statements are false. (Mirza Aff. ¶¶ 3-11.) As

17   Plaintiffs fail to demonstrate that the Reviews caused them any injury, Plaintiffs cannot meet the

18   second element of the *Highfields* test. *See Highfields*, 385 F. Supp. 2d at 981 (because "[t]here

19   simply is no reason to believe, on the record made here, that the posting of these three messages

20   poses any threat to any commercial interest of plaintiffs," and "[t]here is no reason to believe that

21   there is any risk that these messages will draw clients to plaintiff's competitors or will cause

22   potential clients to pause before engaging plaintiff's services," quashing subpoena seeking

23   anonymous internet speakers' identities); *Art of Living Found.*, 2011 WL 5444622, *10 (plaintiffs

24   failed to meet second *Highfields* requirement because "[d]enying the discovery request at this

25   time will not cause comparable injury to Plaintiff's interests").

26   In contrast, in *Obi Pharma, Inc. v. Does 1-20*, No. 16CV2218, 2017 WL 1520085 (S.D.

27   Cal. Apr. 27, 2017), on which Plaintiffs rely (Pls.' Mem. at 11), the plaintiff "provided the Court

28   with evidence that the[] false statements" at issue "may have been intended to manipulate

-17-

1    Plaintiff's stock price and profit from short selling and may have also interfered with its ability to

2    obtain FDA approval of its medications and maintain the requisite investment to continue

3    developing its products." *Obi Pharma, Inc.,* 2017 WL 1520085, at \*5.  Based on this evidence,

4    the court held that the plaintiff met the second *Highfields* requirement.  *Id.*  As Plaintiffs have not

5    adduced any evidence of harm, *Obi Pharma* is inapposite.

6         Plaintiffs further cite *Obi Pharma*'s statement that "it is questionable whether these

7    posts," *i.e.*, the anonymous defendants' allegedly defamatory statements, "are entitled to any First

8    Amendment protection."  (Pls.' Mem. at 11 (quoting *Obi Pharma, Inc.*, 2017 WL 1520085, \*5).)

9    *Obi Pharma* premised this statement on the notion that the defendant's online comments about

10   the plaintiff "would be, at best, commercial speech."  *Obi Pharma, Inc.*, 2017 WL 1520085, \*5

11   n.6.  It is not clear what the statements at issue in *Obi Pharma* said, as the plaintiff submitted

12   them to the court under seal.  *Id.* at \*4.  In any event, the challenged statements in the Reviews

13   are not "commercial speech."  Commercial speech is speech that "does no more than propose a

14   commercial transaction," *Virginia State Bd. of Pharm. v. Va. Citizens Consumer Council*, 425

15   U.S. 748, 762 (1976), and none of the Does' statements regarding Mirza proposes a transaction of

16   any kind.  *See Dex Media West v. City of Seattle*, 696 F.3d 952, 959 (9th Cir. 2012) ("[A] yellow

17   pages directory goes beyond the threshold classification of commercial speech," because "[t]he

18   yellow pages clearly do 'more than propose a commercial transaction.'").  Regardless,

19   commercial speech is, in fact, entitled to First Amendment protection.  *See, e.g., Nordyke v. Santa*

20   *Clara Cty.*, 110 F.3d 707, 713 (9th Cir. 1997) (because county's lease addendum "curtails

21   commercial speech, rather than attempting to impose by proper legislative acts such restrictions

22   on the sale of guns at gun shows not otherwise provided by, but consistent with, the applicable

23   federal and state law," addendum violated First Amendment).

24        **C.  Plaintiffs Have Not Demonstrated that the Does' Identities Cannot Be Obtained
          from Other Sources**

25

26        Although Plaintiffs assert that "permitting discovery of the identity of the anonymous

27   speakers will afford Plaintiffs the opportunity to continue to litigate its [sic] claims" (Pls.' Mem.

28   at 10-11), Plaintiffs have made no showing that they attempted, by means other than serving

-18-

1   subpoenas, to learn the Does' identities.  Mirza's affidavit makes no claim that he examined his

2   records in an attempt to identify the Does based on their descriptions of their experiences using

3   his services, or that he took any other steps to discern the Does' identities other than through

4   litigation.  Nor is it clear whether Plaintiffs attempted to obtain the Does' identities from the

5   named defendants in the New York Action, whom Plaintiffs added as defendants after receiving

6   their identities from Yelp (Mercer Decl. ¶¶ 16, 19, 20).  *See Art of Living Found.*, 2011 WL

7   5444622, *10 (quashing subpoena seeking identity of anonymous poster on the grounds that,

8   *inter alia*, "Plaintiff could acquire some of the information it seeks — such as the number of

9   people who viewed or downloaded the [post] . . . from Google or Automattic"); *Enterline v.*

10  *Pocono Med. Ctr.*, 751 F. Supp. 2d 782, 788 (M.D. Pa. 2008) (denying motion to compel

11  newspaper to produce anonymous commenters' identities because "[t]he Court does not find that

12  the Plaintiff has demonstrated that the information required to prove her claims . . . [is]

13  unavailable from other sources," as such information may "be obtained through normal,

14  anticipated forms of discovery"); *Doe v. 2TheMart.com Inc.*, 140 F. Supp. 2d 1088, 1097 (W.D.

15  Wash. 2001) (quashing subpoena seeking anonymous speakers' identities, as defendant "failed to

16  demonstrate that the information it needs to establish its defense is unavailable from any other

17  source").

18  **<u>CONCLUSION</u>**

19      For the foregoing reasons, Plaintiffs' motion should be denied.

20    Dated:  June 13, 2019          **SEUBERT FRENCH FRIMEL & WARNER LLP**

21

22                By: _____

23                    WILLIAM J. FRIMEL

24                    Attorneys for Subpoenaed Party
                      YELP INC.

25

26

27

28